# Wheeling.

## McMechen *et al. v.* McMechen *et al.*

### Decided April 30, 1881.

1881
Spring
Special Term.

McMechen
*et al.*
v.
McMechen
*et al.*

1. A widow has no right to contest her husband's will, for she is not bound by it but may renounce it.

2. But her children, who were the heirs of the testator, have the right by their mother as their next friend to take an appeal from the probate of the will.

3. The fact, that the widow was improperly joined in the appeal, does not affect the rights of the children by their mother and next friend in the said appeal.

4. The devisees of a testator are his assignees within the meaning of sec. 23, chap. 130 of the Code.

5. To exclude the evidence of a wife after the death of her husband of conversations had by the wife with her husband, it must not only appear, that she testifies against such parties as are mentioned by said statute, but also that she testifies *in her own behalf,* that is, she must also testify in her own individual interest, unless the conversations were such, as would be excluded at common law.

6. The widow in her own right not being allowed to contest her husband's will, was not at liberty to choose which side of the appeal she would take, but must be made in this appeal an appellee.

7. When a medical expert is asked to give his professional opinion to a jury, not upon matters within his own knowledge, but upon a hypothetical case founded upon the testimony of witnesses previously examined in the case, the questions to him must be so shaped, as to give him no occasion to mentally draw his conclusions from the whole evidence or a part thereof, and from those conclusions so drawn express his opinion; or to decide as to the weight of evidence or the credibility of witnesses; and his an-

1881
.Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

swers must be such, as not to involve any such conclusion so drawn, or any opinion of the expert as to the weight of the evidence or the credibility of the witness.

8. The opinion of medical experts, founded on testimony already in the case, can only be given on a hypothetical case, and the hypothesis must be clearly stated, so that the jury may know with certainty, upon precisely what state of assumed facts the expert bases his opinion.

9. At common law a man could not make a will; and the statutes of wills changing the common law, and permitting persons to dispose of their property by will, but requiring, that the testator should be of sound mind, as to testamentary capacity changed the common law presumption of sanity, and cast the burden of proof upon the propounder of the will, to show that the testator was sane when the will was executed.

10. When a will is offered for probate, the burden is on the propounder to prove, that the will was duly executed according to the requirements of the statute, and that at the time of the execution thereof the testator was of sound mind and authorized under the statute to make a will.

11. The burden of proof of fraud or undue influence, exercised to induce the testator to execute a will, is not on the propounder thereof, but upon him who alleges it to exist.

12. It is error to give inconsistent instructions to the jury, for it is calculated to confuse and mislead them; it leaves the jury at liberty to decide according to the correct rule of law or the contrary, and renders it impossible for the court to determine upon what legal principle the verdict was founded.

13. If a person writes or prepares a will, under which his infant children take a benefit, that is a circumstance which ought generally to excite the suspicion of the court and calls upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce, unless the suspicion is removed.

14. It is improper for a court in instructing a jury to single out certain facts and instruct the jury, that if they are true, they should find for either party in accordance with such facts, when there are other facts in the case bearing upon the subject.

15. Where the question was, whether the testator at the time his signature was affixed to his will was conscious of what he was doing, and whether the signature was written by a conscious testator or by another person for him in accordance with his desire, and it appeared, that the signature was written in a manner different from the testator's usual mode of writing it, on the

question of his competency, it is proper for the court to instruct the jury, that they might consider the mode of spelling the name.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

16. And in such a case, where it is a question, whether the testator acknowledged the signature to be his, it was proper for the court to instruct the jury that they might consider the mode of spelling the name.

17. If one having testamentary capacity is unable from any physical cause to write his name to his will, another person may steady his hand and aid him in so doing; and it is not necessary to prove an express request from the testator for such assistance; it may be inferred from the circumstances of the case.

18. Upon the question of testamentary capacity, if the name signed to the will is written differently from the testator's usual mode of writing it, that is a circumstance proper to be considered by the jury.

19. It is error to instruct the jury upon a conjectural state of facts, upon which no evidence has been offered; but if the evidence in the case *tends* to prove certain facts, it is proper to give instructions to the jury based thereon.

20. The attestation of a will is necessary to its execution; and if before this important part of the execution, and while it is being done, the testator by reason of either unconsciousness or physical inability was unable to dissent from the attestation and to arrest and prevent the same by indicating his dissent or disapproval, if he had desired to do so, the will is not valid.

21. It is not necessary that the testator shall actually assent to the attestation, but when the attestation is made, he must be in a mental and physical condition, which will enable him to dissent from the attestation, if he desires; and if his condition is such, that he could give dissent or disapproval, if he chose to do so, but did not, his assent will be implied.

22. Standing alone, evidence, that the testator had by his father's will received the largest portion of his father's estate, would be inadmissible.

23. Upon the question of testamentary capacity evidence is admissible of declarations by the testator, that he had received the largest portion of his father's estate, and that he intended by his will to restore a part thereof to his brothers and sisters, where the will shows, that he had made his brothers and sisters or their children beneficiaries thereunder.

24. And after such declarations have been proved, it is proper upon the question of testamentary capacity to admit evidence, that the testator had in fact received the larger portion of his father's estate, and the extent of the inequality.

Appeal from a sentence of the circuit court of the county of Marshall refusing to admit the will of Shepherd McMechen to probate, in which James H. McMechen and others were proponents and A. C. McMechen and others were contestants, allowed upon petition of said proponents.

Hon. Thayer Melvin, judge of the first judicial circuit, pronounced the sentence appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

A paper-writing purporting to be the last will and testament of Shepherd McMechen, deceased, dated on the 24th day of October, 1874, was on the 5th day of December, 1874, presented to the clerk of the county court of Marshall county, and, as appears by the certificate of the clerk made on said last mentioned day, fully proved by the oaths of C. C. McMechen, Ellen Caldwell and Elizabeth Morrow, the subscribing witnesses thereto, and ordered to be recorded. And William M. List and Jesse L. McMechen, the executors in said will named, by their writing declined to qualify as such executors, and on motion of Alcinda C. McMechen, the widow of Shepherd McMechen, deceased, V. L. Cockayne was appointed as administrator with the will annexed, and qualified as such. On the 14th day of June, 1875, Alcinda C. McMechen, widow of the testator, in her own right and Mary L. McMechen and Shepherd V. McMechen, the infant children and heirs at law of Shepherd McMechen, deceased, by Alcinda C. McMechen, their next friend, took an appeal from the order of the clerk of the county court admitting said will to probate and filed their bond in accordance with the requirement of the statute in such case.

On the 21st day of June, 1875, the circuit court of Marshall county at a special term appointed V. L.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Cockayne curator of the estate of Shepherd McMechen, deceased, who thereupon executed bond as such curator.

On the 22d day of June, 1875, at the same special term of said court it was ordered, that James McMechen, Mary McMechen, Susan McMechen, Benson McMechen, Benson Caldwell, William M. List, Jessie L. McMechen and others, devisees under the will be summoned to appear before the court on the 1st day of the next term thereof, to answer the said appeal, &c. On the 5th day of October, 1875, came the parties by their attorneys, and the paper-writing purporting to be the last will and testament of Shepherd McMechen, deceased, dated the 24th day of October, 1874, was propounded for probate according to the order of the court made at a former day of the term ; and the appellants and contestants averred, that the said paper-writing was not the true last will and testament of the said Shepherd McMechen, deceased, and on their motion it was ordered, that a jury be empanelled to try and to ascertain, whether the said paper-writing dated on the 24th day of October, 1874, and propounded for probate as and for the last will and testament of the said Shepherd McMechen, deceased, is the last will and testament of him the said Shepherd McMechen, deceased, or not. On the next day a jury was regularly empanelled and sworn to try the issue. The trial was in progress some days; and on the 16th day of October, 1875, the jury failing to agree was discharged.

On the 29th day of January, 1877, another jury was empanelled and sworn to try the said issue ; the trial was in progrsss until the 19th day of February, 1877, when the jury rendered the following verdict: "We the jury find, that the paper-writing dated October 24, 1874, and here offered for probate is not the will of Shepherd McMechen, deceased." Whereupon the appellants insisted that judgment on the verdict aforesaid ought not to be rendered, because the proceeding could not be maintained, and moved the court to set aside the verdict and grant them a new trial, on the ground that

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

the verdict was contrary to the law and the evidence, and upon the ground that the court erred in both the admission and rejection of evidence and in instructions given to the jury at the instance of the appellants, and in modification of instructions asked by appellees. Which motion the court upon consideration overruled, and on the 1st day of February, 1879, gave a final sentence in the cause: "that the said paper-writing dated on the 24th day of October, 1874, purporting to be the last will and testament of Shehperd McMechen, deceased, is not the last will and testament of Shepherd McMechen, deceased, and that the same be rejected as said last will and testament, and that the appellants aud contestants recover of the appellees and propounders their legal costs by them in this behalf expended. And it is further ordered and adjudged, that the order of the clerk of the county court of Marshall county, heretofore made on the 5th day of December, 1874, in vacation, be, and the same is hereby reversed and annulled," &c.

Several bills of exceptions to rulings of the court, were saved to the appellees.

The first, to the admission of the evidence of the expert Dr. Bruce.

The second, to the admission of that portion of the evidence of Alcinda C. McMechen, as detailed conversations between herself and husband.

The third, to the giving of certain instructions asked by appellants, and the modification of certain instructions asked by the appellees.

The fourth to the refusal of the court to set aside the verdict and grant a new trial. The last bill certifies all the evidence in the cause.

Such instructions, as are referred to in the bills of exceptions, will be copied in the opinion. Such portions of the evidence as are necessary to be considered, will also be referred to in the opinion.

From the said sentence of the circuit court, refusing to

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

admit said will to probate and rejecting the same, the appellees appealed to this Court.

*W. P. Hubbard and Daniel Lamb* for appellants cited the following authorities :

45 Ia. 93 ; 78 N. C. 509 ; 3 Greenl. Ev. § 5 ; 14 Gratt. 592 ; 20 Ohio 223 ; 17 Ohio St. 521 ; 10 Clarke & Fin. 211 ; 9 Car. & P. 601 ; 7 Metc. 505 ; 7 Gray 471 ; 12 N. Y. 362 ; 64 N. Y. 595 ; 2 Lans. 206 ; 35 Vt. 398 ; 37 N. H. 23 ; Code, ch. 130, § 23 ; 64 Barb. 189 ; 11 Hun. 214 ; 67 N. Y. 495 ; 11 W. Va. 562 ; 12 Hun. 179 ; 3 Lans. 68 ; 6 Hun. 299 ; 46 Barb. 30 ; 48 Barb. 190 ; 27 Gratt. 78 ; 9 Smede. & M. 34 ; 5 Wend. 199 ; 2 Lans. 94 ; Code, ch. 78, § 11 ; 29 Pa. St. 298 ; 13 Conn. 136 ; 4 Litt. 215 ; 10 Allen 138 ; 1 Munf. 22 ; 8 Wall. 376 ; 13 Wall. 1 ; 21 Ohio St. 628 ; 32 Ala. 447 ; 18 Me. 349 ; 6 Gratt 25 ; 38 Ill. 237 ; 10 Gratt. 242 ; 26 Gratt. 152 ; 45 Conn. 19 ; 67 Ill. 431 ; 45 Ind. 518 ; 3 T. B. Mon. 146 ; 19 Wis. 96 ; 20 Wis. 344 ; 40 Md. 374 ; 15 Gratt. 231 ; 22 Ohio St. 2 ; 5 Otto 461 ; 29 Pa. St. 232 ; 14 Wall. 447 ; 20 How. 254 ; 9 Wall. 553 ; 5 Otto 703 ; 26 Gratt. 585 ; 10 Gratt. 242 ; 58 Ill. 300 ; 6 Gratt. 25 ; 7 Rob. (new) Prac. 442-444 ; 13 How. 307 ; 102 Mass. 239 ; Law R. 6 Q. B. 474 ; 1 Greenl. Ev. § 210 ; 6 Greenl. R. 68 ; 1 Bos. & Pul. 293 ; 6 Esp. 20 ; *Id.* 61 ; 4 Camp. 481.

*James Morrow, Jr.*, for appellees cited the following authorities :

7 Gray 471 ; 14 Gratt. 592 ; 2 Lans. 206 ; 9 Car. & Paine 601 ; 35 Vt. 400 ; 37 N. H. 23 ; 10 Clarke & Fin. 211 ; 64 N. Y. 595 ; 12 N. Y. 362 ; 7 Metc. 505 ; 17 Ohio 223 ; 17 Ohio St. 521 ; 64 Barb. 189 ; 11 Hun. 214 ; 67 N. Y. 495 ; 4 W. Va. 729 ; 2 Redf. (N. Y.) 465 ; 6 Lans. 502 ; 26 N. Y. 264 ; 36 N. Y. 233 ; 59 N. Y. 337 ; 10 Hun. 550 ; 39 Miss. 56 ; 38 Ill. 237 ; 14 Ohio St. 90 ; 10 Ohio St. 14 ; 12 Gratt. 252 ; 11 Gratt. 220 ; 6 Gratt. 1 ; 6 Pet. 628 ; 26 Gratt. 152 ; 1 Jarm.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Wills 40, 41, 42; 5 Otto 461; 40 Miss. 374; 20 Wis. 344; 19 Wis. 96; Hagg. 612; *Id.* 250; 26 Gratt. 152; 1 Curt. 637; 3 Wash. C. C. 580; 22 Me. 438; 42 Vt. 558; 1 Mass. 258; 39 N. Y. 153; 9 Pet. 446; 2 How. 483; 1 Gratt. 130; 9 Gratt. 330; 10 Gratt. 71; *Id.* 108 *et. seq*; 4 Wash. C. C. 262; 1 Jarm. Wills 52; 26 Wend. 255; 2 Leigh 401; 1 Gratt. 82; 9 Gratt. 357; 35 Vt. 398; 37 N. H. 23.

JOHNSON, JUDGE, announced the opinion of the Court.

The first question presented is: Could the widow of
the testator in her own right prosecute this appeal? The
widow had no right to contest her husband's will, for she
was not bound by it.   She might have had her statutory
dower and her statutory share of his personal estate, if
she did not like the will; and she must leave it to her
husband's heirs to dispute the will.   She had the power
to renounce the will, and so far as it affected her rights
her will was stronger than his, and as to her rights she
might have set it aside by a simple election.   *McMasters*
v. *Blair,* 29 Pa. St. 298.   She elected not to renounce
the will, as she might have done, and therefore she in
her own right was only interested in sustaining the will.
But her children, who were the heirs, who would have
taken the entire property after the widow's share was
taken out, had the undoubted right by their mother as
next friend to take the appeal from probate, and if
they could, prevent the probate of the will; and that the
widow in her own right was improperly joined with them
in the appeal, in no wise affects their rights.   The ap-
peal as to the widow might properly by the circuit court
have been dismissed, and that dismissal could not affect
the rights of the infants by their mother their next friend,
in the appeal.

This disposition of the right of the widow to take the
appeal will assist us in deciding, whether her evidence as
to conversations had with her husband were improperly
admitted in evidence.   There was certainly nothing in

the communications themselves of such a confidential character, as would make them improper evidence at common law. *White* v. *Perry*, 14 W. Va. 66. One of the communications had, which will show their character was: "He asked me to put him into another room on the opposite side of the hall." The conversations were not excluded by the statutes. Section 23, chapter 130 of the Code among other things declares, that "a party shall not be examined *in his own behalf* in respect to any transaction or communications had personally with a deceased person, *against* parties, who are the executors, administrators, heirs at law, or next of kin, or assignees of such deceased person, where they have acquired title to the cause of action from or through such deceased person, or have been sued as such executors, administrators, heirs at law, next of kin, or assignees." The italics are mine. The statute had with certain restrictions taken away the obstacle to a party testifying, where he was interested in the subject, upon which he was called to testify.

It has been held in New York upon the construction of a statute similar to ours, that the devisees of real estate are the assignees of the testator within the meaning of their statute, and we think properly so; and therefore the devisees of the real estate under the will of Shepherd McMechen are the assignees of said Shepherd McMechen within the meaning of section 23, chapter 130 of our Code. *Buck* v. *Staunton*, 51 N. Y. 624; *Cornell* v. *Cornell*, 12 Hun. 314.

Mrs. McMechen was testifying *against* some of the devisees under the will. But, to exclude her evidence of conversations with her husband, her evidence must not only be *against* such devisees, but must be *in her own behalf*. The object of the exceptions to the statute permitting interested witnesses to give evidence was to prevent false swearing and its consequences to other parties interested in the suit; and it was supposed, that this object would be obtained by preventing the witness from

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Syllabus 4.

Syllabus 5.

1881
Spring
Special Term.

McMechen
et al.

v.

McMechen
et al.

swearing in his own *interest* or *behalf*, which is the same thing. The witness by the statute in such a case is not prevented from giving evidence *against* his interest.

Mrs. McMechen declining to renounce the will, moving for the appointment of an administrator with the will annexed, and the will itself providing so liberally for her, as the evidence shows, convinces my mind, that it was her individual interest to have the will sustained; her evidence therefore was not in her own *behalf*, but against *her interest*. It is no answer to say that her evidence was in favor of her children. That is not prohibited by the statute, but expressly allowed, notwithstanding the witness may be interested in the suit. This is not one of those cases, where a party may choose his side of the controversy. Mrs. McMechen, as we have seen, could not contest the will of her husband, and she was not therefore at liberty to choose her side. She had elected by failing to renounce the will to be a devisee thereunder; and while she had an interest in the will, by her own choice that interest was in favor of and not against the will; and she ought therefore to have been made an appellee. But her being made so would not compel her to use any exertion to sustain the will. She could, as the next friend of her children carry on the appeal in their name even against herself, and as we have seen, her evidence being against the will is competent.

Should the testimony of the medical expert, Dr. G. W. Bruce, have been excluded? The bill of exceptions raising this question shows, that Dr. Bruce was a graduate of a medical college and had been a practicing physician for over twenty-five years. It seems, that he did not hear the testimony of the witnesses at the trial, but that he had heard Dr. Frissell's evidence read, and that of Dr. Ford. After testifying in a general way as a medical expert with regard to the effect of physical disease upon the mind, &c., the following question was propounded to him: "Please state, whether in your opinion

*Syllabus 6.*

*Syllabus 7.*

1881
Spring
Special Term.

McMechen
et·al.
v.
McMechen
et al.

a person, who was suffering, as Mr. McMechen was, as testified to by ————, who was conditioned as Mr. McMechen was, as testified to by Doctors Ford and Frissell and Carter McMechen, and who was cold to the elbows and knees at five o'clock and at eleven o'clock, and who died at or about five o'clock of the same night, whether he would be physically able to write his name or not?" To which question the witness answered as follows: "I believe it was testified here, that he was cold at five o'clock in the afternoon—testified by Dr. Ford—and at eleven o'clock—by Dr. Frissell, and at five o'clock in the morning died. You asked me the question, if a short time before he died he would be able to—" and the counsel for contestants then interrupting the witness said: "No I ask this question! 'If a person in the condition he was at these two times, as testified by these two medical gentlemen, and who was cold to the elbows, and cold to the knees, and did die at about five o'clock, would be physically capable of writing his name twenty or thirty minutes before his death?'" The answer is: "It is not likely that he would have been able to have done it."

Dr. Bruce was asked also the following question: "Please state if a person conditioned as Mr. McMechen was on the night of his death, and who was, as testified to by Dr. Frissell, when he visited him at eleven o'clock, practically dying, and who did die at or about five o'clock that same night, whether or not in your opinion he would be mentally capable of transacting important business twenty or thirty minutes before he died?" The answer to this question is as follows: "It is presumed here, that I heard Dr. Ford's testimony. I have heard it, and I shape my answer in accordance. Taking into consideration Dr. Ford's evidence to the effect, that he was in such a condition at five o'clock, and Dr. Frissell at ten or eleven o'clock, I would say, that he was not mentally capable of transacting important business. I refer particularly and attach a great deal of consequence

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Syllabus 7.

to what Dr. Ford said on the subject of his being in that comatose condition—that is, in the absence of its being from the effects of opium."

There seems to be no conflict of authorities on the law applicable to the testimony of medical experts. The law bearing upon the precise question we are now considering may be thus correctly stated : When a medical expert is asked to give his professional opinion to a jury not upon matters within his own knowledge but upon a hypothetical case founded upon the testimony of witnesses previously examined in the case, the questions to him must be so shaped, as to give him no occasion to mentally draw his own conclusions from the whole evidence or a part thereof, and from the conclusion so drawn express his opinion, or to decide as to the weight of evidence or the credibility of witnesses; and his answers must be such, as not to involve any such conclusions so drawn, or any opinion of the expert, as to the weight of the evidence or credibility of the witnesses. *Butler* v. *St. Louis Life Insurance Co.*, 45 Ia. 93 ; *State* v. *Bowman*, 78 N. C. 509 ; *Livingston's Case*, 14 Gratt. 592 ; *Cincinnati Insurance Co.* v. *May*, 20 Ohio 223 ; *Commonwealth* v. *Rogers*, 7 Met. 505 ; *Woodbury* v. *Obear*, 7 Gray 471 ; *The People* v. *Lake*, 12 N. Y. 362 ; *Reynolds* v. *Robinson*, 64 N. Y. 395 ; *Carpenter* v. *Blake*, 2 Lans. 206 ; *Fairchild* v. *Bascomb*, 35 Vt. 398 ; *Spear* v. *Richardson*, 37 N. H. 23.

In *State* v. *Bowman*, the first question propounded to the expert was : " Have you heard the statements of the witnesses, as to the circumstances immediately preceding her being taken sick, the appearance of the body immediately after death, its appearance subsequent and before interment, the condition of her limbs and members, the account given by the deceased of her manner of death, her asking to have her feet uncrossed, and the manner in which she gripped him and her child, and have you heard the testimony of Mr. Redd, as to his analysis and its results, and from them can you as a physician form

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

an opinion as to the cause of her death?" The witness answered, " Yes."

" In giving answer do you exclude from your consideration the evidence of other circumstances in the nature of moral evidence in the case?" The witness answered, " I do."

" What in your opinion was the cause of her death?" The witness answered, " I believe it was strichnine."

It was held by the court, that the evidence was improper, as it invaded the province of the jury in drawing their own conclusions from the testimony, of the credibility of which they alone must judge.

In *Woodbury* v. *Obear*, Shaw, Chief Justice, said : "We think the question put to Dr. Williams as an expert, asking his opinion, whether having heard the evidence he was or was not of opinion, that the testator was of sound mind, was not admissible in that form. This would be especially irregular, where the evidence is conflicting, because it puts it in the power of the expert to give an opinion upon the credibility of the testimony, and the truth of the facts, which is purely a question for the jury, and then upon the value and efficacy of the facts and circumstances in his opinion thus proved upon the question of soundness of mind. We think the question as modified by the court and then admitted was correct, to put the case hypothetically, as thus, ' If certain facts assumed by the question to be established by the evidence should be found true by the jury, what would be his opinion upon the facts thus found true on the question of soundness of mind?' "

The first question propounded to the expert is manifestly improper, because it required the witness to draw his own conclusions as to *how Mr. McMechen was suffering*, as testified to by ———, *how he was conditioned* as testified to by Drs. Ford, Frizzell and Carter McMechen. The jury are not informed in the question of the basis, upon which the expert is asked to express his opinion. The expert is left to draw his own conclu-

Syllabus 8

1881
Spring
Special Term.

McMechen
*et al*

v.

McMechen
*et al.*

sions from the evidence of certain witnesses, whose evidence is not stated to him, nor the conclusion of fact from the evidence by the counsel and put hypothetically in the question of the extent of the *suffering* of, or the condition of Mr. McMechen at the time supposed. The expert in his attempted answer, which was interrupted, undertook to state the supposed condition, but counsel for contestants interrupted him, and said, " No I ask this question: If a person in the condition he was at these two times, as testified by those two medical gentlemen, and who was cold to the elbows and cold to the knees and did die about five o'clock, would be physically capable of writing his name twenty or thirty minutes before his death ?" To which he answered : "It is not likely, that he would have been able to have done it." The counsel was not content with asking the expert the question, which would not have been objectionable, " If a person who was at five o'clock and eleven o'clock cold to the elbows and knees, and who died at five o'clock the next morning, would be physically capable of writing his name twenty or thirty minutes before his death ?" but in addition to this he asks, " if a person in the condition he was at these two times, as testified to by these two medical gentlemen, and who was cold," &c. In what condition ? What did these two gentlemen testify was his condition at these two times ? It is left for the medical expert, to draw his own conclusions from the testimony of " these two medical gentlemen," as to what was the testator's condition at these two times, and holding it in his mind to form his opinion and express it upon the *condition* of the testator thus ascertained, when neither the jury nor the court know or can know what that basis was.

It is for the jury to find what the testator's condition was at these two times, and not for the witness. The counsel might in his question, or the expert in his answer might, have assumed from any evidence in the case, what that condition was, and assuming it to be

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

true might have asked the expert for, or he might have given his opinion on that assumed state of facts; and then the jury would have known, upon what he based his opinion; but here they could not know, every individual juror might form an opinion from the testimony of the two witnesses, as to what the condition of the testator was at the specified times, and they might all differ from each other, and each differ from the expert, and yet each of them might suppose, that the expert understood from the evidence of " the two medical gentlemen," the condition to be the same he understood it to be. This will not do. It is just as unreasonable, as to ask an expert, who has heard all the evidence, "from the evidence, in your opinion was the testator sane or not, when the will was executed ?"

The same objection exists to the last question propounded to the expert and to the answer given thereto. In the answer to the last question, which did not mention Dr. Ford's name, the expert says: "It is presumed here, that I heard Dr. Ford's testimony." How was it presumed? He evidently thought, that he was not confined in the question to Dr. Frissell's evidence, as that would not permit him perhaps to give an answer satisfactory even to himself, and he therefore bases his answer partly on Dr. Ford's testimony, which is not stated, and of which the expert says: "I refer particularly and attach a great deal of consequence to what Dr. Ford said on the subject of his being in a comatose condition, that is, in the absence of its being from the effect of opium." Here again it is impossible to tell, upon what assumed state of facts the expert gave his opinions. He was permitted by the question, to gather from the evidence without stating it, "the condition" of Mr. McMechen on the night of his death. The opinion of the medical expert founded on testimony already in the case, can only be given upon a hypothetical case, and not on every hypothetical case even. The hypothesis must be clearly stated, so that the jury may know with certainty,

1881
Spring
Special Term.

McMechen
et al.
v
McMechen
et al.

upon precisely what state of assumed facts the expert bases his opinion.

The testimony of the expert, ought to have been rejected; and the court erred in admitting it.

It is insisted by counsel for proponents, that the court erred in giving to the jury at the instance of contestants instructions, numbers one, five, six, seven and eight, and in modifying instructions, numbers fifteen and sixteen, asked by proponents. Instruction number one is as follows:

"The jury is instructed, that the burden is on the proponents of the will in question, to prove the due execution thereof, and that the same is the last will of a free and capable testator."

It seems to be conceded in the argument of counsel for proponents, that the burden is on the proponents of the will to prove, that it was the will of a *capable* or *competent* testator; but it is denied, that the burden is on them to prove, that it is the will of a *free* testator. The word *free* as used in the instruction must be understood to mean, that no fraud was practiced on the testator, and no undue influence was exercised to induce him to execute the will.

In *Dean* v. *Heirs of Dean*, 27 Vt. 746, there was an appeal from a decree admitting a will to probate. The court in its opinion says: " It is also insisted, that no testimony appears in the case, showing that the will was ever published by the testator, or that he was of sound and disposing mind at the time of its execution. That the testator was of a sound and disposing mind is a legal presumption. It is for those who object to the will to show such an incapacity, if it exist."

*Perkins* v. *Perkins*, 39 N. H. 163, was an appeal from the decision of the judge of probate disallowing a will. The court held, that " every man is presumed to be of sane mind, until the contrary is proved. In the proof of a will the presumption of sanity is sufficient to support the will, till some evidence to the contrary is of-

1881
Spring
Special Term.

McMechen
*et al.*
v.
McMechen
*et al.*

Syllabus 9.

fered." To the same effect is *Zimmerman* v. *Zimmerman*, 23 Pa. St. 375. But these authorities do not state the correct rule. At common law a man could not make a will. But by the English statute, 32 Hen. VIII, persons might dispose of their property by will. There was nothing in this statute to change the rule of the common law as to the legal presumption, that a man is of sound mind, until the contrary appears. But a few years after the statute of 34 and 35 Hen. VIII was passed, and ch. 5, sec. 14 of that statute provides, that " wills, &c., made, &c., by any person *de non sane* memory shall not be taken to be good or effectual in law." The effect of this Syllabus 10. statute was, in the proof of a will not only to require that it was executed as the statute required, but that at the time of its execution the testator was sane. And so the English courts seem to have regarded it. *Harris* v. *Ingledew*, 3 P. Wms. 91; *Willis* v. *Hodgeson*, 2 Atk. 56. In this case Lord Hardwick said: " It had been determined over and over in this court, that you must show the person to be of sound and disposing mind, where a will is to be established as to real estate, and especially if there are infants in the case ; proving it to be well executed according to the statute of frauds and perjuries is not sufficient." See also *Barry* v. *Butlin*, 1 Curt. 637, in which Baron Parke said : " The strict meaning of the term ' *onus probandi* ' is this, that if no evidence is given by the party, on whom the burden is cast, the issue must be found against him. In all cases this *onus* is imposed on the party propounding a will. It is in general discharged by the proof of capacity, and the fact of execution."

The effect therefore of the English statute requiring, that a man could not execute a will, unless he was of sound mind, was in that case to take away the common law presumption of sanity, and throw the burden of proof upon the propounder of the will, not only to show the due execution of the will, but the additional fact, that at the time of the execution the testator was of sound mind.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

The statutes of wills of all the States, so far as I know, declare, that the testator must be of sound mind, before he can make a will.   This is the Massachusetts statute, which is similar to ours, and Thomas, Judge, in *Crowningshield* v. *Crowningshield*, 2 Gray 527, said :   " When therefore a will is offered for probate, to establish it, to entitle it to such probate, it must be shown, that the supposed testator had the requisite legal capacities to make the will, to wit, that he was of full age and of sound mind" (these being statutory requirements) "and that in the making of it the requisite formalities have been observed.   The heirs at law rest securely upon the statutes of descents and distribution, until some legal act has been done, by which their rights under the statutes have been lost or impaired.   Upon whom then is the affirmative ?   The party offering the will for probate says in effect :   ' This instrument was executed with the requisite formalities by one of full age and of sound mind ;' and he must prove it; and this is to be done by showing not merely, that the instrument was in writing, that it bears the signature of the deceased, and that it was attested in his presence by these witnesses ; but also that it was signed by one capable of being a testator, one to whom the law had given the right of making disposition of his property by will."

The current of the American authorities is in accord with the case last cited, and the rule is, that when a will is propounded for probate, the burden is on the propounder to prove, that the will was duly executed according to the requirements of the statute, and that at the time of the execution thereof the testator was of sound mind and authorized under the statute to make a will.   *Cilley* v. *Cilley*, 34 Me. 162 ; *Comstock et al.* v. *Hadlyme*, 8 Conn. 254 ; *Robinson* v. *Adams*, 62 Me. 369 ; *Delafield* v. *Parish*, 25 N. Y. 9; *Hawkins* v. *Grimes*, 13 B. Mon. 257 ; *Evans* v. *Arnold*, 52 Ga. 169 ; *Taff* v. *Hosmer*, 14 Mich. 309.

The reason of the rule of law, as laid down in the

foregoing authorities, is that the heir at law ought not to be disinherited without every requirement of the statute having been complied with. Wills are often admitted to probate in common form, no one is present except the propounder and the subscribing witnesses ; and it seems to me to be a salutary rule to require proof, before the heir is to be disinherited, that not only were all the forms of law observed in the execution of the will, but that the testator was authorized by statute to execute the will and was of sound mind. Wills are often made by persons *in extremis,* and it is but right, that proper safeguards should be thrown around a testator under such circumstances. But while the burden is on the propounder of the will to prove what we have stated, it does not follow, that the burden is on him to prove, that the will was executed by a *free* testator. The burden of proof of fraud or undue influence exercised to induce a testator to execute a will, is on him, who alleges it; it is not on the propounder of the will. And the rule laid down to the contrary in *Riddell et al.* v. *Johnson's ex'r et al.,* 26 Gratt., and in *Evans* v. *Arnold et als.,* 52 Ga. 169, is not the law. In the case of *Riddell et al.* v. *Johnson's ex'r* there is some reason for the language used by Judge Anderson in delivering the opinion of the court, because he must be understood, as laying down the rule in reference to the circumstances of that case. In that case it appeared, that the scrivener, who wrote the will, took a benefit under it. But in the Georgia case there was no such fact, and it seems to me, there is not the slightest warrant in the uniform current of authorities for such a broad rule as is adopted in that case. The courts in both cases seem to have been misled by the rule laid down by Baron Parke in *Barry* v. *Butlin,* 1 Curt. 637. But Baron Parke is there discussing a case, in which the party, who wrote the will, took a benefit under it, and his language must be understood as applying to such a case. In the long list of anthorities I have cited it never seems to have occurred to the courts, that the bur-

1861
Spring
Special Term.

McMechen
et al.
v.
McMechen

Syllabus 11.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

den of proof was on the propounder of a will to show that the testator was free from fraud or undue influence, when the will was executed. The very reason, which places the burden on the propounder to show, that the will was executed by a *competent* testator, excludes the idea, that it is on him to show, that it was the will of a *free* testator. The only reason, why the burden is on him in the one case, is, because the statute requires certain prerequisites to a valid will, which must be shown *prima facie* by the propounder of the will; that the testator was *free* when he executed the will is not among them. Of course the common law, before it would hold the heir bound by the will, would require that the will like any other instrument should not have been procured by unfair means. But the common law presumes that all men are honest and demean themselves properly, until the contrary appears, and therefore he, who would allege that a will or other instrument was procured by fraud or other unfair means, must prove it; the burden is on him to show it. But in the interest of the heir, who but for the will would inherit the property, the statute requires, that it shall appear, that the testator was competent to execute the will. The statute in this particular shifts the presumption from where the common law laid it; but it does not touch the presumption, that all men are honest, but leaves it in the cases of the execution of wills as in other cases, where it was at common law. The instruction did not therefore propound the law correctly.

The instruction was erroneous for another reason; it was inconsistent with instruction number twelve, given at the instance of the proponents. That instruction is as follows: " Fraud or undue influence in the procurement of a will is not to be presumed, but the burden of the proof lies upon the party, who alleges it, to establish the same by evidence. It is not required, that there be direct and positive proof of such fraud or undue influence, but it may be deduced from the established facts and circum-

stances of a given case. At the same time it will not be inferred from opportunity and interest merely on the part of those, to whom the fraud or undue influence may be attributed."

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

It is error to give inconsistent instructions to the jury, for it is calculated to confuse and mislead them ; it leaves the jury at liberty to decide according to the correct rule of law or the contrary, and renders it impossible for the court to determine, upon what legal principle the verdict was founded. *Illinois Central Railroad Co.* v. *Moffit*, 67 Ill. 431 ; *Kingen* v. *State*, 45 Ind. 518 ; *Clay* v. *Miller*, 3 T. B. Mon. 146 ; *Sears* v. *Lay*, 19 Wis. 96 ; *Imhoff* v. *Chicago, &c., R. Co.*, 20 Wis. 344 ; *Southern R· Co.* v. *Hudrick*, 40 Miss. 374 ; *Va. Central R. Co.* v. *Sanger*, 15 Gratt. 231 ; *Pendleton Street R. Co.* v. *Stallman*, 22 Ohio St. 2 ; *Pound* v. *Turk*, 5 Otto 461.

It appears in evidence in this case, that J. H. Good, a nephew of the testator, wrote the will in question, and that a bequest was made therein to his infant children. The rule as to this matter, we think, is correctly stated by Baron Parke in *Barry* v. *Butlin, supra*, that if a party writes or prepares a will, under which he takes a benefit, that is a circumstance, which ought generally to excite the suspicion of the court, and calls upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce, unless the suspicion is removed.

In discussing the subject Baron Parke says : " If it is intended to be stated as a rule of law, that in every case, in which the party preparing the will derives a benefit under it, the *onus probandi* is shifted, and that not only a certain measure but a particular species of proof is therefore required from the party propounding the will, we feel bound to say that we conceive the doctrine to be incorrect. The strict meaning of the term '*onus probandi*' is this, that if no evidence is given by the party, on whom the burden is cast, the issue must be found against him. In all cases this *onus* is imposed on

1881
Spring
Special.Term.

McMechen
et al.
v.
McMechen
et al.

the party propounding a will; it is in general discharged by proof of capacity and the fact of execution; from which the knowledge of, and assent to, the contents or the instrument are assumed, and it cannot be, that the simple fact of the party, who prepared the will, being himself a legatee, is in every case and under all circumstances to create a contrary presumption, and to call upon the court to pronounce against the will, unless additional evidence is produced to prove the knowledge of its contents by the deceased. A single instance of not unfrequent occurrence will test the truth of this proposition : a man of acknowledged consequence and habits of business worth £100,000, leaves the bulk of his property to his family, and a legacy of £50.00 to his confidential attorney, who prepared the will, would this fact throw the burden of proof of actual cognizance by the testator of the contents of the will on the party propounding it, so that if such proof were not supplied, the will would be pronounced against ? The answer is obvious, it would not. All that can be truly said is, that if a person, whether attorney or not, prepares a will with a legacy to himself, it is at most a suspicious circumstance of more or less weight according to the facts of each particular case; in some of no weight at all, as in the case suggested, varying according to circumstances, for instance, the *quantum* of the legacy, and the proportion it has to the property disposed of, and numerous other contingencies; but in no case amounting to more than a circumstance of suspicion demanding the vigilant care and circumspection of the court in investigating the case, and calling upon it not to grant probate without full and entire satisfaction, that the instrument did express the real intentions of the deceased."

From this examination of Baron Parke's opinion it is manifest, that he unadvisedly used the word *free* in the first rule he laid down, as it is inconsistent with his whole opinion.

In *Drake's Appeal from probate*, 45 Conn. 1, it ap-

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

.peared, that a testator having an estate of $14,000.00 with no family made a will five days before his death and while suffering from severe disease, by which will after giving two of his brothers $1,000.00 each, $1,000.00 to certain other relatives and $1,000.00 to a friend, he gave the residue of his estate to a church in the town where he lived. It appeared, that the will was drawn by H., who was a vestryman of the church, and who was also made sole executor ; that three brothers and a sister of the testator lived within a few miles of him, and were not notified of his being dangerously ill, until shortly before his death, and after the will was executed ; that H. was deeply interested in the welfare of the church, and a liberal contributor to its support; that he and another vestryman were two of the witnesses to the will, and a brother-in-law of H. was the third witness; and that the will described certain half nephews and a half niece of the testator, as his brothers and sister. It was held, that the circumstances were such as to create a suspicion of undue influence, which might be considered by the jury without any direct proof of such influence, and such as to require explanation on the part of the persons propounding the will.

Notwithstanding the fact, that the infant children of Mr. Good took a benefit under the will, yet that fact might be explained, and if it appeared, that the amount received by them was small in proportion to the testator's property, that Mr. Good himself was a nephew of the testator, that he had not been with his uncle during his sickness, until he answered the summons to be present on the night of the death of the testator, that he was not then with him alone, and that he declined a legacy to himself and made no request, that one should be left to his children, the jury might well consider, that such facts and circumstances would fully meet any suspicion, that might be raised by the fact, that he prepared the will, and his infant children took a benefit under it.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Did the court err in modifying proponents' instructions numbers fifteen and sixteen? Instruction number fifteen is as follows: "If after the writing offered for probate was written by the draughtsman, the signature 'Shepherd McMechen,' which appears at the end of said writing, was put there by said Shepherd McMechen himself, or by another person in the presence of the said Shepherd McMechen, and with his knowledge and assent, and the intention on his part that the said writing should be his will, then it is wholly immaterial, that said signature was written in full instead of being abbreviated in the usual manner, in which he may have been in the habit of writing it." The court refused to give to the jury the said instruction as moved for by proponents, but modified the same by adding at the end thereof the following: "But it is proper for the jury to consider all the evidence including the mode of spelling the name, in determining whether it was intended by the testator to be his signature to said paper."

It is true, as contended for by the counsel for proponents, that it is improper for a court in instructing a jury to single out certain facts and instruct the jury, that if they are true, they should find for either of the parties in accordance with such facts, when there are other facts in the case bearing upon the subject. *Fine* v. *St. Louis, &c.*, 39 Mo. 67; *McCortney* v. *McMullen*, 38 Ill. 240. The jury should consider all the evidence bearing upon the particular subject, upon which the instruction was asked. What was that subject in this case to which the instruction related? Whether the testator, at the time the signature to his will was affixed, was conscious of what he was doing; whether the signature was written by a conscious testator himself, or by another for him in accordance with his instruction. The court is asked to charge the jury, that if he wrote the signature himself, or if it was written by another in his presence with his knowledge and assent and the intention on his part, that the writing, to which it was affixed, should be his will,

Syllabus 14.

Syllabus 15.

it was wholly *immaterial,* that it was written in full, or abbreviated as he was in the habit of writing it.

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

It is proved in the case, that the usual mode, in which the testator wrote his name, was " Shep'd McMechen," and the signature to the will is " Shepherd McMechen." There was much testimony before the jury as to his mental and physical condition, at the time the will was prepared and during that night both before and after. It was contended on the one hand, that his mind was clear, until after the subscribing witnesses attested the will, and that after that time he lived twenty or thirty minutes, and though his hand was steadied by another, yet he wrote the signature himself, and afterwards distinctly acknowledged it ; and there was evidence tending to prove all this. On the other hand it was contended, that the testator was in a dying condition, when the will was executed ; that the signature was not the act of the testator at all, but of another, who held his hand and wrote the signature for him ; that at the time the testator was unconscious of anything that was being done ; and that he did not acknowledge the signature to be his; and there was evidence tending to prove this state of facts also.

Under these circumstances it was peculiarly the provence of the jury to determine, what the real fact was, and whether the making of the will was the act of a competent testator, whether he had consciousness at the time, and whether he was in such a condition as to know and understand what was being done. Every circumstance, that tended to throw any light upon these questions, it was proper for the jury to consider including the mode of spelling the name. Whatever light, be it little or much, that circumstance might shed upon the question of his mental capacity at that critical time, the jury were entitled to have.

It is true, that if one having testamentary capacity, Syllabus 17. is unable from any physical cause to write his name to his will, another person may steady his hand and aid

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Syllabus 18.

him in so doing, and it is not necessary to prove an express request from the testator for such assistance; it may be inferred from the circumstances of the case. *Vandraff et al. v. Rinehart,* 29 Pa. St. 232. But upon the question of testamentary capacity, if the name thus signed is written differently from the testator's usual mode of writing it, that is a circumstance proper to be considered by the jury.

The court properly modified the instruction, as without such modification it was calculated to mislead the jury.

The sixteenth instruction for proponents was : " It is not necessary, that the subscribing witnesses to a will should see the testator sign, or that he should acknowledge to them the subscription of his name to be his signature, or even that the instrument is his will. If the testamentary capacity exist at the time, it is enough, that he should acknowledge in their presence, that the act was his, he having at the time a knowledge of the contents of the instrument and the design, that it should be the testamentary disposition of his property. If the jury believe from the evidence, that the paper-writing here offered for probate was subscribed by Shepherd Mc-Mechen himself, and that such acknowledgment of said paper-writing was made by him, the jury are instructed, that such an acknowledgment is a recognition and ratification of his signature. If the jury believe from the evidence, that the name of Shepherd McMechen was subscribed to said paper-writing by another, and that such an acknowledgment of said paper-writing was made by said Shepherd, the jury are instructed, that such acknowledgment is a recognition and ratification of the signature, as having been made for him, in his presence and by his direction; and in that state of facts, it is wholly immaterial, that said signature was written in full instead of being abbreviated in the usual manner, in which said Shepherd may have been in the habit of writing it."

The court refused to give the instruction as asked, but modified it as follows: "But in considering the question of ratification the jury are to consider all the evidence in the cause relating thereto, including the mode of spelling the signature."

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

All we have said in considering instruction number fifteen with the modification applies to this: Did he ratify the signature? In this question is involved his mental capacity; and we think the jury would be in danger of being misled by the instruction without the modification, as it might induce them to believe that on the question of "ratification," which was put to them, the circumstance of the signature being written in a different manner from his usual mode of writing it should have no weight with the jury; when it should have just such weight and no more as a jury would under the circumstances give to it. We think the court did not err in modifying this instruction.

The proponents excepted to the giving of instruction number seven, asked by contestants, which is: "That if the jury shall find from the evidence, that the paper-writing of October 24, 1874, here offered for probate was signed by Shepherd McMechen himself or by some other person in his presence and by his direction, in the presence of the attesting witnesses to said paper-writing, and was then and there shortly afterwards acknowledged by said Shepherd McMechen before said attesting witnesses as his last will, such acknowledgment made as aforesaid is not required by law, and does not add to the legal validity of said paper-writing as a will."

For what purpose did the contestants ask this instruction? As an abstract legal proposition it is undoubtedly correct; but it seems inappropriate in this case. The contest was, whether at the time of the signing of the will and of the acknowledgment of the signature, if both were done, Shepherd McMechen, the testator, was of sound mind and conscious of what he was doing. On this question the jury certainly had the right to con-

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

sider the acknowledgment of the signature, as well as the signing thereof; and it seems to me, that the instruction as given was calculated to mislead them by withdrawing their minds from the true issue in the case and by inducing them to direct their attention more to the signing of the will, than to the acknowledgment of the signature, when upon the question of capacity or undue influence they should regard all the evidence as to both. Without modification, I think the instruction was improper under the circumstances of the case. But the majority of the court think, that taken in connection with the other instructions given to the jury, the giving of this instruction was not an error for which the case should be reversed; but a majority of the court, I among them, agree, that it would have been better under the circumstances appearing in the record to have modified the instruction so as read as follows: "That if the jury shall find from the evidence, that the paper-writing of October 24, 1874, here offered for probate was signed by Shepherd McMechen himself, or by some person in his presence, and by his direction, in the presence of the attesting witnesses to said paper-writing, and he was then of sound mind, and it was then and there shortly afterwards acknowledged by Shepherd McMechen before said attesting witnesses as his last will, and that the said paper-writing shortly after such acknowledgment was signed by the attesting witnesses in his presence, and that the testator, at the time said attesting witnesses signed the same, was of sound mind and physically able to assent to or dissent from such attestation, said acknowledgment made as aforesaid is not required by law and does not add to the legal validity of the will; but the jury in considering the state of mind of the said Shepherd McMechen should consider all the evidence in the case bearing upon that subject."

Counsel for proponents insist, that the court erred in giving at the instance of contestants instructions numbers five, six and eight.

The fifth instruction is: "The jury is instructed, that if they find from the evidence, that at the time of the execution of the paper-writing here offered for probate as Shepherd McMechen's will, the testator was not able to write his own name, and that William M. List did, without the testator's request or consent, take hold of the testator's hand and so write the testator's name thereto, that such signing of the testator's name to said paper is not in law, without more, a sufficient signing to make the same the true last will of Shepherd McMechen, deceased; but if the said McMechen, afterwards acknowledged the said paper as his will, as contemplated by number nine of proponent's instructions, such acknowledgment is a ratification of such signature."

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

It is said by counsel in support of this alleged error, that "there was nothing in the evidence to justify the supposition, that the aid given to the testator by William M. List in making the signature to the will was without the testator's consent. On the contrary the subsequent acknowledgment of the testator afforded clear and un-contradicted affirmative evidence, that it was done with his consent." This is a proper argument for the jury upon the weight of the testimony, but it cannot avail here, because there is certainly evidence in the record tending to show, that the testator was very weak physically, at the time the signature was written, and one of the questions was, whether he was not physically incapable of writing his name even with aid; and it was also disputed, that he acknowledged the signature at all. It was exclusively for the jury to say what the fact was. The instruction was properly given.

The sixth instruction for contestants is: "The jury is instructed, that if they are satisfied from the evidence in this case, that the paper-writing of October 24, 1874, here offered for probate as the will of Shepherd McMechen, deceased, was made by him by reason of an undue influence exercised upon his mind and will, and would not have been made by him but for such influence, then they

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Syllabus 19.

should find, that the same is not his last will." The objection to this instruction by counsel is, that it is an instruction upon a supposed or conjectural state of facts, of which there was no evidence. It is true, that it is error to instruct the jury upon a conjectural state of facts, of which no evidence has been offered. (*Improvement Co.* v. *Morrison,* 14 Wall. 447; *United States* v. *Britting,* 20 How. 254; *Michigan Bank* v. *Eldred,* 9 Wall. 553; *Railroad Co.* v. *Houston,* 5 Otto 703; *St. Louis, &c., R. Co.* v. *Manly,* 58 Ill. 300). But if the evidence in the case tends to prove *certain* facts it is proper to give instructions to the jury based thereon. (*Parley* v. *English,* 10 Gratt. 242; *Reas's adm'r* v. *Trotter,* 26 Gratt. 585). There is evidence in the case tending to prove undue influence. Testimony is in the case of declarations, shortly before the testator was taken sick, that indicate an aversion to make a will, and one witness testified, that on the night of the death of the testator he said, "he did not want to make a will, but those people tormented and worried him so, that he had made up his mind to do it." Then the circumstance of the guiding of the hand by William M. List, and the controversy as to whether the signature was not written wholly by Mr. List, instead of by the testator; and the further fact, that the scrivener's children took a benefit under the will, and other circumstances that might be mentioned, however little or much weight there may have been in them, or however they may have been contradicted or explained, were all tending to show undue influence and were sufficient, upon which to base the instruction.

Contestants instruction number eight to the giving of which the proponents excepted is as follows: " If the jury believe from the evidence, that at the time the attesting witnesses were requested to sign said paper, and at the time they were engaged in signing the same, the said Shepherd did not possess sufficient consciousness to hear and understand and assent to said request, or dissent from the same, if he had wished, or that he did not pos-

sess sufficient consciousness to recognize and understand what said attesting witnesses were doing, and to assent to their acts, or that he did not possess sufficient consciousness and sufficient physical strength to have dissented from the said attestation, and to have arrested and prevented the same by indicating his dissent or disapproval, if he had desired to do so, then the jury must find, that the said paper is not the will of the said Shepherd McMechen."

The attestation of a will is necessary to its execution, and if before this important part of the execution of the instrument, and while it is being done, the testator by reason either of unconsciousness or physical inability, was unable to dissent from the attestation and to arrest and prevent the same by indicating his dissent or disapproval, if he had desired to do so, the will is not valid. It is not necessary, that the testator shall actually assent to the attestation, but when the attestation is made, he must be in a mental and physical condition, which will enable him to dissent from the attestation, if he desires ; and if his condition is such, that he could give such dissent or disapproval, if he chose to do so, but does not, his assent will be implied. The instruction propounds the law correctly, and was properly given.

The motion for a new trial in this case is based in part upon the exclusion of a part of Mrs. Good's testimony. The following appears by the record : "State if your brother Shepherd did or did not get the largest share of your father's estate ? Answer—Yes sir." The question and answer objected to. "Answer continued. He did, more than all of us." The record shows, that counsel for proponents proposed to show by the testimony, that Benjamin McMechen, the father of "the testator, Shepherd McMechen, had at his death left the larger portion of his estate to his son, Shepherd McMechen, having some nine or ten children surviving; that Shepherd McMechen was properly sensible of the inequality perhaps of the distribution of the property, which had been

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

Syllabus 20.

Syllabus 21.

1881
Spring
Special Term.

McMechen
*et al.*
v.
McMechen
*et al.*

made; that he expressed himself to that effect, and that in consequence of this state of affairs he felt under an obligation to his brothers and sisters and their children, and felt, that it was his duty in some measure at least to restore the property which fell to his lot in the distribution of the estate; the question, which is asked Mrs. Good, being merely introductory to further testimony, which plaintiff expects to offer on that point."

"The court—I think you may prove what he said on that subject, but I don't think this testimony is proper."

Then Mr. Morrow, counsel for contestants, asked to have that testimony stricken out, and the court ruled out the question and answer, and the proponents excepted.

Syllabus 22.

Syllabus 23.

Syllabus 24.

Standing alone, evidence, that the testator had by his father's will received the largest portion of his father's estate, would be inadmissible. But upon the question of testamentary capacity evidence is admissible of declarations by the testator, that he had received the largest portion of his father's estate, and that he intended by his will to restore a part thereof to his brothers and sisters, where the will shows, that he had made his brothers and sisters, or their children, beneficiaries thereunder. And after such declarations have been proved, it is proper to admit evidence, that the testator had in fact received the larger portion of his father's estate, and the extent of the inequality. Whether the evidence excluded should have been admitted depends upon the fact, whether evidence was before the jury as to such declarations of the testator. It is natural for a testator to provide for those nearest him, and to give them the whole of his property. When there is any doubt of his competency to make a will, the fact, that he has devised a very considerable portion of his property to others of his relations, or to strangers, is proper to be considered by the jury; also it is proper for the proponents of the will, if they can, by proper and relevant testimony explain, why it was,

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

that the testator disposed of his property in the manner he did.

The *first* clause of Shepherd McMechen's will provides for the payment of his debts; the *second* provides for his wife and children; the *third* for his brother James H. and his children except two, who are provided for in the *fourth* clause; the *fifth* for his nephews, William M. List and Jesse L. McMechen; the *sixth* for his two nephews, Benson Caldwell, and Benson McMechen, son of James H. McMechen; and the *seventh* gives all his personal property to his wife and the children of J. H. Good; one half to his wife, the other half to the said children. These are all the provisions of the will disposing of his property. The *second* clause of the will is as follows: "I give and devise to my wife, Alcinda C. McMechen, for and during her natural life all that portion of my home-farm lying between the Baltimore and Ohio railroad and the Ohio river, and the property of John Morrow on the south and Aaron Kelly on the north, with remainder over to my two children, Mary L. McMechen and Shepherd V. McMechen, share and share alike." The evidence shows, that a large portion of the estate was given to the other devisees.

When the court excluded the testimony of Mrs. Good, it seemed to have forgotten, that evidence had already been given as to declarations of the testator as to his having received the largest share of his father's estate, and that he would distribute it properly among his relatives. Thomas P. Shallcross in his evidence, which was introduced before the testimony of Mrs. Good was excluded, says, that some time, not earlier than the summer of 1872, among other things the testator said to him, "that in the division of the estate of his father he had received more than his share, but that he intended to distribute it properly among his relatives." J. H. Botsford testified to a conversation with the testator, in which he said to him: "How came it that your father gave you so much larger a share than the balance?" Witness thought his

1881
Spring
Special Term.

McMechen
et al.
v.
McMechen
et al.

answer was that he didn't know.   Then witness said:
" You have more than all of them."   He said : " Well,
he didn't know whether more than all, but he had the
largest share."   Witness made some remark, to which
he replied : " If I live, I shall make it all right with the
heirs."   This is, it seems to me, sufficient to show the
propriety of admitting the testimony of Mrs. Good.   It
was for the jury to say, whether he referred to making a
will, when he said, " that he intended to distribute his
estate properly among his relatives," and that " if he
lived he would make it all right with the heirs."   The
court erred in excluding the testimony.

We deem it improper to decide in a case like this,
whether the verdict should or should not have been set
aside as contrary to the evidence, where a new trial
must be had.

The sentence and judgment of the circuit court of
Marshall county in this appeal pronounced on the 1st
day of February, 1879, rejecting the will of Shepherd
McMechen, deceased, is reversed at the costs of Alcinda
C. McMechen, next friend, &c. ; and this Court proceed-
ing to render such judgment as the circuit court of
Marshall county should have rendered, the verdict of the
jury is set aside, and a new trial awarded the proponents
and appellees, the costs to abide the result of the appeal ;
and the said appeal as to Alcinda C. McMechen, widow
of the testator, in her own right, is dismissed but with-
out costs, and she is directed to be summoned in this
appeal as an appellee ; and this cause is remanded to the
circuit court of Marshall county, for further proceedings
to be had therein, according to the principles herein set
forth.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.