JACOB LEVY et al., Respondents, v. CALEB A. BURGESS, Appellant.

Where, upon failure of one party to perform his contract within the time specified, the time is extended upon a certain condition, a performance of the condition is requisite to enable the party to avail himself of the extension.

Defendant contracted to purchase of plaintiffs certain railroad bonds indorsed by the State of A., to be delivered and paid for at a specified time and place. Defendant attended at the time and place to receive the bonds, but plaintiffs were unable to perform. Defendant informed plaintiffs that they could deliver within a certain time to his brokers, M. & T., bonds, the indorsements upon which were signed by the governor of A. *as governor;* said brokers were authorized to receive and pay for the bonds if so signed, but not otherwise. Plaintiff had contracted with H. for the bonds, who offered bonds, a portion of which were signed by the governor, but without the addition of his name of office. H. allowed plaintiff to take the bonds to tender to M. & T., under an agreement that, if accepted, plaintiff would accept them as a good delivery on the contract of H. The bonds were tendered within the time, but M. & T. refused to accept

because not indorsed as prescribed, and the bonds were returned to H. In an action upon the contract, *held*, that by the failure of plaintiffs to perform at the time agreed upon, defendant was discharged unless he waived his right or extended the time; that to avail themselves of the extension plaintiffs were bound to comply with the condition imposed, and a tender of bonds of a different description, although the indorsement was a valid indorsement of the State, was insufficient; also, that a tender to M. & T. of bonds, which, as plaintiffs knew they were not authorized to accept, was not equivalent to a tender to defendant.
*Levy* v. *Burgess* (6 J. & S., 431) reversed.

(Argued February 17, 1876; decided March 21, 1876.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York affirming a judgment in favor of plaintiffs, entered upon a verdict. (Reported below, 6 J. & S., 431.)

This action was brought upon the following contract, signed by defendant:

"NEW YORK, *August* 28, 1872.
" $20,000.

"I have bought of Levy & Borg twenty thousand dollars of Alabama and Chattanooga railroad first mortgage eight per cent bonds, indorsed by the State of Alabama, numbers to run below four thousand, July, 1872, coupons on, at eighty and one-half cents on the dollar, payable and deliverable in thirty days from date, fixed 'flat,' with interest at the rate of    per cent per annum, either party having the right to call for deposits of ten per cent during the pendency of this contract.

"C. A. BURGESS."

The parties agreed upon the time and place of performance, to wit, 12 o'clock, at noon, at plaintiffs' office. Defendant's evidence was to the effect that upon the day when the contract matured, at the hour fixed, he called at plaintiffs' office to receive and pay for the bonds; he was informed by one of the defendants that they had not got the bonds; that the person from whom they bought had tendered bonds which they had refused to accept, because they were not properly indorsed

by the State of Alabama, the governor of that State not having signed the indorsement as governor, but only in his own name. Defendant called again at one o'clock and was informed the plaintiffs had not the bonds. He then told them that they might, up to quarter past two, deliver the bonds to Meserole & Trumbull, defendant's brokers, if they were signed by the governor as governor. Said firm were authorized by defendant to accept and pay for the bonds if so signed, but not otherwise. Plaintiffs had contracted with one Hoenig for the bonds. The indorsements upon a portion were as follows:

"In pursuance of certain acts of the general assembly of the State of Alabama, namely, an act approved February 19, 1867, entitled 'An act to establish a system of internal improvements in the State of Alabama,' and an act approved September 22, 1868, entitled 'An act to amend the law to establish a system of internal improvements in the State of Alabama,' and an act approved November 17, 1868, entitled 'An act relating to the Willis Valley Railroad Company, and the North-east and South-west Alabama Railroad Company.'

"The State of Alabama hereby indorses this bond, and becomes liable for the payment of the principal and interest thereof, the Alabama and Chattanooga Railroad Company having complied with the conditions upon which the undersigned, governor of the State of Alabama, is required, on the part of the State, to give such indorsement.

"In witness whereof, the undersigned, governor of the State of Alabama, has hereto set his hand, and caused [L. S.] to be affixed hereto the seal of the State of Alabama, this first day of January, A. D. 1869.

"W. H. SMITH."

Plaintiffs agreed to accept them if accepted by Meserole & Trumbull, and Hoenig, upon this agreement, authorized a tender of them, and went with one of plaintiffs, about two o'clock, to the office of said brokers for that purpose, where a tender was made, but they refused to accept because not signed as required by defendant's instructions to them, which

they stated as the reason for refusal. The bonds were handed back to Hoenig, who retained them until October seventh, when they were taken by plaintiffs. The bonds were subsequently sold at a price below the contract-price, and this action was brought to recover the deficiency.

At the close of the evidence, defendant's counsel moved to dismiss the complaint, on the ground that no tender had been proved, which motion was denied, and said counsel duly excepted. Said counsel requested the court to submit to the jury the question, among others, whether a tender had in fact been made. This request was denied, and the court directed a verdict for plaintiffs for the amount of the deficiency, to which defendant's counsel duly excepted.

*Theron G. Strong* for the appellant. A tender of bonds by plaintiffs on September 27, 1872, was necessary to establish a cause of action. (*Nelson* v. *Plimp. F. P. E. Co.*, 55 N. Y., 480; *Williams* v. *Healy*, 3 Den., 363; *Baker* v. *Higgins*, 21 N. Y., 397; 2 Smith's L. C., 8; *Glazebrook* v. *Woodrow*, 6 T. R., 366.) The tender made was not good because plaintiffs did not own or have possession of any bonds to tender. (*Champion* v. *Joslyn*, 44 N. Y., 653; *Kortright* v. *Cady*, 21 id., 343, 354; *Hume* v. *People*, 8 East, 168; *Bklyn. Bk.* v. *Degraw*, 23 Wend., 342; *Wilder* v. *Seelye*, 8 Barb., 408; *Knight* v. *Beach*, 7 Abb. Pr. [N. S.], 241.) The court erred in excluding evidence to show that the contract was made with reference to bonds signed by "W. H. Smith, governor," and no others. (*Freeland* v. *Burt*, 1 T. R., 201; Greenl. on Ev., § 286; *Cary* v. *Thompson*, 1 Daly, 35; *French* v. *Carhart*, 1 N. Y., 96, 102; *Moore* v. *Meacham*, 10 id., 207, 211; *Chester* v. *Bk. of Kingston*, 16 id., 336; *Hinneman* v. *Roserback*, 39 id., 98; *Field* v. *Munson*, 47 id., 221.)

*S. Sidney Smith* for the respondents. The proceedings for the sale of the bonds and the sale were regular. Plaintiffs were not obliged to give defendant notice. (*Dustan* v. *McAndrew*,

44 N. Y., 72 ; 10 Bosw., 130 ; *Hayden* v. *Demets,* 53 N. Y., 426 ; *Pollen* v. *Le Roy,* 30 id., 549 ; *Lewis* v. *Greider,* 49 Barb., 606.) The tender of the bonds was sufficient. (*Champion* v. *Joslyn,* 44 N. Y., 653.) Defendant, having declined the tender and stated the ground of his refusal, is bound thereby, and cannot now claim an advantage from any other alleged informality. (Benj. on Sales [1st Am. ed.], § 716 ; *Carman* v. *Pultz,* 21 N. Y., 547, 561 ; *Gould* v. *Banks,* 8 Wend., 562.)

ANDREWS, J.· The contract between the parties was mutual, and it was to be performed by each at the same time. The plaintiffs bound themselves to deliver the bonds on the day named in the contract, and the defendant, at the same time, was to pay the purchase-price. The parties, after the contract was made and before its maturity, fixed upon an hour when they would meet at the office of the plaintiffs, on the day the contract matured, to perform it. This became a part of the agreement between them and had the same force and effect as if the particular time and place of performance had been named in the original contract. (*Franchot* v. *Leach,* 5 Cow., 506 ; *Davis* v. *Talcott,* 14 Barb., 612.) The plaintiffs, therefore, in order to recover against the defendant, were bound to show a performance of the contract on their part, by delivering or tendering the bonds to the defendant at the time and place appointed, or that performance at that time was prevented or waived by the defendant. ( *Williams* v. *Healey,* 3 Den., 363 : *Nelson* v. *Plimpton Fire Proof Elevating Co.,* 55 N. Y., 480.) The judge, on the trial, directed a verdict for the plaintiffs, and the propriety of this direction is to be tested by assuming that the jury would have found the contested facts in favor of the defendant. The defendant testified — and in this respect there is no serious discrepancy between his testimony and the plaintiff's — that he went to the plaintiffs' office at the hour appointed, on the day the contract matured, to receive and pay for the bonds, and was informed by the

plaintiffs that they had not yet received them. The plaintiffs, when the contract was made, did not own the bonds they agreed to sell, but they afterwards contracted to purchase them of one Koenig, to enable them to perform their contract with the defendant. The plaintiffs' contract was to deliver bonds of "The Alabama and Chattanooga Railroad," indorsed by the State of Alabama. They informed the defendant, at the interview referred to, that the person from whom they had bought the bonds, had tendered bonds on his contract which they had refused to accept, the objection being that a part of them were not properly indorsed by the State of Alabama, for the reason that the governor of that State had not signed the indorsement as governor, but in his own name, without adding his official designation. The General Term was clearly right in holding that this objection was not well founded, and that the indorsement was the act and contract of the State. The instrument of indorsement purports to bind the State; it refers to the acts of assembly under which the indorsement by the governor on the part of the State was authorized. The *in testimonium* clause recites that : "The undersigned, governor of the State of Alabama, has hereto set his hand and caused to be affixed hereto the seal of the State of Alabama," etc., and the seal of the State was affixed. It was the obligation of the State, and not of the person whose name was signed to it, and the addition of his name of office to his signature was unnecessary.

Delivery of bonds indorsed in this form would have been a good delivery under the contract with the defendant. But the plaintiffs neither owned or had in his possession these or any bonds called for by his contract with the defendant, at the time the plaintiffs, pursuant to the arrangement between the parties, was to deliver them. They at that time did not deliver or offer to deliver them. They were not in a situation to perform their contract, and the defendant on his part was ready to take the bonds. It was no excuse for the failure of the plaintiffs to perform, that Koenig had not performed his contract, or that the plaintiffs declined to receive the bonds

tendered by him under a mistake of law. The defendant was no longer bound, unless he waived his rights or extended the time of performance by the plaintiffs. It is quite evident, that at the time of this first interview between the parties, they both understood that bonds signed by the governor, without his official designation, would not be a good delivery under the contract. The defendant, as he testifies, left the plaintiffs' office and returned within a short time, and then informed the plaintiffs that they could deliver the bonds for him signed by Smith, as governor, to Meserole & Trumbull, brokers, up to a quarter past two o'clock of that day, who would receive and pay for them. The plaintiffs, before the time limited, offered to Meserole & Trumbull bonds of the requisite amount, but on twelve of them the indorsements was signed by Smith, without the addition of his name of office. M. & T. refused to accept them on the ground that they were not authorized by the defendant to accept bonds so indorsed. The bonds thus tendered to M. & T. were owned by Koenig, who allowed the plaintiffs to take them to tender to the brokers, under an agreement with the plaintiffs, that if the bonds were accepted by Meserole & Trumbull, the plaintiffs would accept them as a good delivery on their contract with Koenig. Immediately upon the refusal of M. & T. to accept them, they were returned to Koenig, who held them for some days when the plaintiffs took and paid for them.

The plaintiffs cannot avail themselves of the tender made to Meserole & Trumbull as a performance of their contract with the defendant. When the permission was given to the plaintiffs to deliver bonds on the defendant's account to M. & T., the plaintiffs were in default, and if they acted upon it they were bound by the condition imposed, and a tender of bonds of a different description from those specified in the permission would be unavailing and nugatory. It would not be sufficient to tender other indorsed bonds, although of the same value, and creating the same obligation. Moreover, M. & T. had only a special authority which was known to

the plaintiffs, and a tender to them of bonds which they were not authorized to accept, was not equivalent to a tender to the defendant. At no time during the day the contract matured, did the plaintiffs own the bonds with which to fulfill their contract. They were intrusted by Koenig with bonds for the special purpose of tendering to Meserole & Trumbull, and as soon as the tender was refused they were handed back to the owner.

The evidence, on the part of the plaintiffs in respect to the arrangement for the delivery of the bonds to Meserole & Trumbull, tends to show that there was no restriction as to the particular form of indorsement, and that the bonds offered were such as the defendant agreed to accept. But we are of opinion that the question whether the tender to Meserole & Trumbull was made in accordance with the arrangement between the parties, was one of fact and should have been submitted to the jury, and that for this reason the judge erred in directing a verdict.

The judgment should be reversed and a new trial ordered, costs to abide event.

All concur.

Judgment reversed.