THIRD NAT. BANK OF CINCINNATI v. HUMPHREYS et al.

(Circuit Court, S. D. Ohio, W. D. April 12, 1895.)

No. 4,591.

1. ACCORD AND SATISFACTION—PERFORMANCE OF CONDITION—PAYMENT.
   Plaintiff, the holder of notes, agreed to release defendants from all liability as indorsers thereon, on payment of 25 per cent. of the indebtedness represented by the notes. Defendants were to give notes for that amount, secured by deed of trust; and it was stipulated that plaintiff should hold the original notes; that, on failure of defendants to pay the composition notes at maturity, the amount paid thereon by sales of land under the trust deed should be credited on the original indebtedness, and plaintiff should have the right to enforce full payment of the balance due on the original notes. The composition notes were not paid at maturity, and plaintiff made no agreement to extend them, or to receive them as a discharge of the original notes. *Held*, that plaintiff was not estopped to assert its claim on the original notes by receiving payments from defendants, partly derived from sales of property covered by the trust deed, and crediting them on the composition notes after maturity.

2. ESTOPPEL—ADMISSION IN PLEADINGS—SCOPE AND EFFECT.
   Where defendants in an action on a note pleaded part payment by a subsequent indorser, who was not a party, plaintiff, by failing to reply, and allowing credit to be taken therefor, is not estopped to deny such payment in a subsequent action against such indorser.

Action by the Third National Bank of Cincinnati against Ira A. Humphreys and others on promissory notes.

Paxton & Warrington, for plaintiff.
Jones & James and G. Bambach & Son, for defendants.

SAGE, District Judge. The plaintiff sues to recover $21,564.19, upon 14 promissory notes of the Boyd Manufacturing Company, made in November and December, 1886, and in January and February, 1887, payable at various dates, beginning with March 12, 1887, and ending June 7, 1887, all to the order of C. W. and S. G. Boyd, and by them and Ira A. Humphreys & Son indorsed.

The defense is a plea of accord and satisfaction. It is based upon a contract in writing made by the plaintiff with the defendants on the 6th of April, 1887, after 4 of said notes had become due, and before the maturity of the remaining 10, all wholly unpaid. The contract provided for the release and discharge by the plaintiff of Ira A. Humphreys and A. E. Humphreys, doing business under the firm name and style of Ira A. Humphreys & Son, from their liability on said notes upon their payment of $6,000, being 25 per cent. of the indebtedness represented thereby.

They were to give their two notes for $3,000 each, payable, one in 60 days, the other in 12 months, after the date of the contract, with 6 per cent. interest, and to be secured by a trust deed to be made by Eleanor A. Humphreys and Ira A. Humphreys, her husband, and to convey to the plaintiff two tracts of land in West Virginia, one containing about 7 acres, and the other about 300 acres. It was stipulated in the contract that the plaintiff should hold and retain the original notes; that, upon the failure of Ira A. Humphreys & Son to pay the two composition notes "at the maturity of the same," the amount paid thereon or by the sale of the real estate described in the trust deed should be credited upon the original indebtedness, and that the plaintiff should have the right to enforce full payment of the balance due on the original notes. It was further agreed that Humphreys & Son should obtain the consent of the Boyd Manufacturing Company (which had meanwhile become insolvent, and made an assignment) by its assignee, under the order of the probate court of Brown county, Ohio, and of C. W. and S. G. Boyd, that the composition with Ira A. Humphreys & Son should in no way impair the liability of the Boyd Manufacturing Company and its assignee, or of C. W. and S. G. Boyd, upon said original notes. Both notes called for by the contract were dated April 6, 1887. The first matured June 8, 1887, and the second April 9, 1888. The trust deed was executed in accordance with the provisions of the contract under date April 6, 1887, and acknowledged May 2, 1887. It included a power of sale, to be exercised by the trustee at the request of the plaintiff, for the payment of the whole or any part of said notes.

Payments were made as follows: June 17, 1887, 9 days after the maturity of the first note, $2,000; November 30, 1887, $250; April 22, 1889, 20 days after the maturity of the second note, $421.25; April 26, 1889, $765; and May 27, 1889, $740,—aggregating $4,176.25. The payment of $2,000 was credited by the plaintiff upon the first note. Between the 5th and 9th of November, 1887, one acre of the land embraced in the deed of trust was sold, and the proceeds ($250) constituted the second payment, credited on the 30th of November, 1887. Between that date and April 22, 1889 (the date of the next following payment), there was frequent correspondence between the bank and defendant Humphreys, in which Humphreys pleaded for forbearance and indulgence, and the bank indicated its disposition to treat him with leniency. Under date February 23d, Humphreys wrote the vice president of the bank that, when certain barges were finished, he could put them to work, and they

would help pay up some of the old score. On the 6th of March, he wrote, requesting that the bank instruct its agent or attorney to make a release of a quarter acre of land included in the trust deed, in consideration of $100. March 13th the bank wrote to Humphreys, acknowledging the receipt of the letter of the 6th, and stated that instructions had been sent to its agent in accordance therewith. April 19, 1888 (10 days after the second composition note fell due), Humphreys wrote the bank, stating his wish to settle up by the 1st of June, 1888, all of the first note, due June 6, 1887, and the interest on the note for $3,000, due April 6, 1888, asking the bank to hold the trust on the land, and carry the note of $3,000 another year, as it was entirely out of his power to pay it in less time. To this letter, the bank, by its vice president, on the 20th of April, 1888, wrote acknowledging its receipt, and, after saying that it had certainly in the past year given evidence of a desire to be easy and not press the defendant to his inconvenience, added:

"We feel that, after the way we have treated you, we have a right to expect you to do all you can in the way of discharging your indebtedness upon the note in question, and we will exercise all the leniency possible in the future. as we have certainly done in the past. We are disposed against any formal extension, as it may prejudice our interests with reference to other parties."

After that date letters passed back and forward, Humphreys stating his efforts, and the bank referring to its course in the business as evidence of its indisposition to distress him, and of its desire to have some payment without further delay. In a letter written by the president of the bank, under date August 25, 1888, he says:

"It is not a case of ultimate security, but to get this matter closed up, and, to do this, there must be some payment made. As in the past, we can give no extension or agreement for extension; our past course being, I should think, all that would be required. Send us some money."

In November, 1888, the defendant had a conversation with the vice president at the bank, in which an arrangement was made for the delivery to the bank by the defendant of two barges, to be sold, and the proceeds applied on the notes. There was also an application by the defendant about the same time for the release of portions of the land conveyed in trust. On December 20, 1888, the vice president of the bank wrote Humphreys, inclosing the statement of his account, including credits and interest on the composition notes to January 1, 1889. He says:

"We will release one-fourth and one-half acre land when we hear that Mr. Brown will attend to it. Please see him, and ask him to answer our letter. We did release some land when you paid the $250. Of course, we will not make release on account barges, but will surrender the note that will be satisfied, and indorse any residue on the other."

About January 13, 1889, a portion of the property covered by the deed of trust was sold and released, and the proceeds, amounting to $421.25, received and credited by the bank on the 60-days note, under date April 22d. On April 26, 1889, the sum of $765, proceeds of the sale of one of the barges, was placed by the bank as

a credit on the 12-months note.    On May 27, 1889, the sum of $740 (proceeds of the sale of the second barge) was placed by the bank as a credit on the 12-months note, and on the same day the bank so advised Humphreys by mail.

Meantime, on the 15th of November, 1888, the bank had brought an action in the court of common pleas in Brown county, Ohio, against the Boyd Manufacturing Company, makers, and C. W. and S. G. Boyd, indorsers, for the amount still due upon the original notes.    On the 15th of December, 1888, the defendants answered, alleging the indorsement of the note to Ira A. Humphreys & Son, and by them to the bank, and that Ira A. Humphreys & Son, as such indorsers, had paid to the bank, on the notes sued upon, the sum of $6,000, which was a credit on said notes as of the date of said payment; also, that the assignee of the Boyd Manufacturing Company had paid on account of one of said notes $123.75.    There was no reply to this answer.    Under the Ohio Code of Procedure, the failure to reply to new matter contained in the answer amounts to an admission.    Judgment was rendered in favor of the bank for $18,691.38, with interest from December 18, 1889, upon a finding that that amount was due upon the notes set forth in the petition, allowing all proper credits thereon.    Six months after the entry of this judgment, the bank brought an action against the Boyd Manufacturing Company, C. W. Boyd, S. C. Boyd, Ira A. Humphreys, and A. E. Humphreys in the circuit court at Kanawha county, W. Va., upon the notes sued upon in Brown county, Ohio, in the action wherein the judgment was taken.    This suit was never pressed, and was dismissed by the bank.    In addition to the payments made by the defendants, there was paid on account of the original notes, on the 4th of August, 1888, by the assignee of the Boyd Manufacturing Company, a dividend of $9^9/_{10}$ per cent. on $23,933.62, the amount then due on the original notes, the dividend being $2,369.43; and on the 5th of July, 1890, a further dividend of one-tenth of 1 per cent. on the same amount, the dividend being $23.93.    On the 29th of January, 1892, this action was brought by the plaintiff in the superior court of Cincinnati.    It was removed to this court by the defendants, citizens and residents of the state of Minnesota.    No payments were made by the defendants after May 27, 1889.

It is argued for the defendants that the agreement out of which the questions in this case arise is neither a composition agreement nor an accord, but an agreement of settlement and conditional release, because it does not purport to be the discharge of a larger liability determined by the payment of a smaller sum, and because the amount of the defendants' liability as indorsers was, when the agreement was made, unknown and undetermined, nor was it known whether there would be any liability against them excepting on the four notes then past due.    Counsel treat the plaintiff's claim as if it were for unliquidated damages.    But the liability of the defendants as indorsers was neither unknown nor undetermined.    Judgment for the full amount of the notes and interest could have been taken against them at any time after their maturity, subject only to the contingency that a failure

to make due presentment and demand of payment, and to give notice of nonpayment to the defendants as indorsers, would have released them; but that possible contingency, altogether under the control of the plaintiff, was not sufficient to make the liability uncertain and undetermined. Whatever designation may be applied to the agreement, it is an agreement for the release of Humphreys & Son upon the condition precedent that they should pay 25 per cent. of the original indebtedness, according to the tenor and effect of the two notes they were to give. The phrase is not "according to their tenor and effect," but "at maturity," which has the same meaning.

The question then is, whether the receipt by the bank of payments made by Humphreys & Son, and credited upon the two notes after their maturity, estopped the bank from asserting its claim against them upon the original notes. The last payment was made May 27, 1889. From that date until August, 1892, nothing was paid or tendered. The bank made no agreement to extend the time of payment, nor to accept the two notes as a discharge of the original notes. In a letter by the vice president of the bank to the defendant, dated April 20, 1888, the bank stated that it was disposed against any formal extension of the composition notes. The president of the bank, in a letter dated August 25, 1888, makes the statement still more emphatic. But it is urged that the receipt of payments, and entering them as credits on the two notes, was in itself sufficient; that it was an election to substitute them finally for the original notes. I am unable to concur in that proposition. If a creditor makes a contract with the principal to extend the time of payment of a note without the consent of a surety, he discharges the surety, but the mere receipt of sums paid on account of the note after its maturity has no such effect. So, in this case, the receipt of sums on account of the two notes after their maturity had the effect to recognize them as in force at that time, or, in other words, to extend the time stated in the contract to the date of those payments. If Humphreys & Son had then offered to pay the two notes in full, the bank would have been obliged to accept the payment, and release them from further obligation. But they did not pay in full. A period of more than three years passed without any payment whatever. If it were conceded that the receipt of the payment of May 27, 1889, was an extension of the time mentioned in the contract to that date and to a reasonable time thereafter, it would be necessary to conclude that a delay of more than three years was unreasonable, and that the right of the bank to fall back upon the original indebtedness, subject to the payments actually made, was clear.

The general rule is well understood to be in accord with the express terms of the contract made in this instance,—that a composition necessarily involves the fact of payment, as was observed by Willes, J., in Edwards v. Coombe, L. R. 7 C. P. 522. To make a composition agreement operate as more than a suspension of the remedy, there must be a performance of the condition; that is,

due payment of the composition. Edwards v. Hancher, 1 C. P. Div. 119. In Re Hatton, 7 Ch. App. 726, Mellish, L. J., said that, where creditors accept a composition, they may either agree to take the promises of the debtor with or without a surety in satisfaction of the debts, or they may agree that payment shall be a condition precedent, and that, if the debtor pays the composition at a certain time and place, the creditors will accept such payment in satisfaction of their debts. He adds that:

"It is a question of construction of the instrument of arrangement, and it is not uncommon for the creditors to accept a promise by the debtor and a surety as a satisfaction of their debts. But, where they agree to accept a composition, the debtor is not discharged unless he pays the composition, for that is the only thing which compels him to pay it, and that is the only hold which the creditors have upon him."

The defendant's view seems to be that the stipulation of the contract, reserving to the bank the right to proceed upon the original notes if the composition notes were not paid at maturity, is to be construed as if it were a condition of forfeiture. But that is not the correct view. In Edwards v. Hancher, cited above, the composition was under resolutions accepted by the creditors. Lord Coleridge said that the terms of the resolution must be complied with, and that the question was as to the construction of the words of the resolution, the general rule being that, if a creditor takes from his debtor a bill or note of an apparently solvent third person, and the bill or note is not paid at maturity, the original debt revives. The burden then rests upon the defendant to show that it was the intention of the parties under the contract to receive the composition in discharge of the original indebtedness. So, with reference to the payments made after the maturity of the composition notes, the question is whether there was any express modification of the contract whereby those notes were recognized as in discharge of the original indebtedness. Mere leniency on the part of the bank, or the mere acceptance of further payment on account of the composition notes, would only operate to extend the time in favor of the defendant up to the date of receipt and credit of such payments, and probably, in equity, to a reasonable time thereafter. In Ex parte King (In re Harper), L. R. 17 Eq. 332, the creditors of two debtors who filed a liquidation petition resolved to accept a composition payable in three installments, respectively at 6, 12, and 18 months after the registration of the resolution. The amount due to one of the debtors was in dispute, and it was agreed that it should be determined by the registrar. This was after the first installment had been paid upon the amount claimed. The creditor took no steps to have the true amount determined until after the third installment fell due. About six months later, the court determined the amount due. The solicitors then had some discussion as to the terms of the order to be drawn up, but, after three weeks' delay, the creditor's solicitor wrote a letter assenting to the order as drawn by the debtor's solicitors, in which letter he said: "When the order is signed, I shall be glad to know if you are prepared to pay the amount of the composition." That was

on the 19th of August. The order was signed by the registrar on the 27th of August. On the 22d of August the debtors proposed to the creditor that they should pay the balance of the composition due to him, not in cash, but partly in bills and partly in cash. The next day the creditor declined this proposal, and on the 25th made a demand for the full amount of the debt. On the 27th of August, the debtors tendered to the creditor the balance of the composition in cash, but he refused to receive it, and on the 29th of August commenced an action to recover the balance of his debt, after deducting the first installment, which he had received. The court held (affirming the decision of the county court judge) that it would be inequitable to allow the creditor to proceed with his action, and that he must be restrained from doing so. The county court judge, in giving judgment, said (as reported in a note to the report of the appealed case) that the result of the cases cited by him seemed to be:

"(4) Where the debtor fails to pay the composition at the time agreed upon, or within a reasonable time after, the court of bankruptcy will not, in general, restrain a creditor suing at law to recover the amount of his original debt; but the court may, nevertheless, in such a case, give relief to the debtor by injunction where something has been done which makes it inequitable that he should enforce his strict legal right, and perhaps, also, in cases of accident or mistake."

The judge said that the suggestion made by the creditor's solicitor, by letter on the 19th of August, that the balance of the composition should be paid after the order was signed, was, he thought, equivalent to saying to the debtors, "Pay the balance of the composition when the order is signed, and our client will be satisfied," and would have a tendency to throw the debtors off their guard; and that, until the sort of consent to postponement given by that letter was clearly and expressly withdrawn, it would have been inequitable that he should take advantage of the omission of the debtors to pay before the order was signed. Vice Chancellor Bacon, in affirming the decision, does little more than to approve and adopt the opinion below. That case clearly recognized: (1) That the only remedy of the debtor was in equity. At law the creditor had a right to his action, notwithstanding the recognition by the creditor of the composition as existing long after the second and third installments were due and unpaid. (2) That the equity to enjoin the creditor's action arose upon the circumstances above detailed, and did not amount to a waiver of the right of the creditor to sue on the original debt upon the failure of the debtors to pay the composition, for (3) the right of the creditor to withdraw any proposition for leniency is expressly recognized. In Levy v. Burgess, 64 N. Y. 390, it was held that where, upon failure of one party to perform his contract within the time specified, the time is extended upon a certain condition, performance of the condition was requisite to enable the party to avail himself of the extension. In Lawson v. Hogan, 93 N. Y. 39, it was held that, where a fixed time has ceased to be an element in the contract, neither party can put the other in default without some notice or demand of perform-

ance. These are statements of the rule at law. That notice, if necessary in this case, was clearly manifested by the bank bringing its action against the defendant and others on the original notes in West Virginia, in 1890. It is, however, urged that the bank, by receiving and crediting the payments, elected to rely upon the composition notes, and waived any right to sue upon the original notes. The case of Robb v. Vos, 155 U. S. 13, 15 Sup. Ct. 4, is cited in support of this claim. But that case is not in point. There the trustees, having made their election by bringing a suit, were held to be estopped from subsequently attempting to enforce another and inconsistent remedy. Here the only suits brought against these defendants have been upon the original notes. It is so well established as not to require verification by citations that, when a party has once made an election between two or more inconsistent courses of proceeding, he will be estopped to depart from that which he first adopts. But in Coleman v. Oil Co., 51 Pa. St. 74, the supreme court of Pennsylvania intimates that the estoppel is limited to other actions between the same parties. This is, indeed, only recognizing the doctrine of privity as it is always applied in determining the extent of an estoppel. See, also, Vulcanite Co. v. Caduc, 144 Mass. 85, 10 N. E. 483. It is also contended that in a suit brought by the bank in the court of common pleas of Brown county, Ohio, against the maker and prior indorsers of the original notes, the defendants pleaded that Humphreys & Son had made a payment of $6,000,—that is to say, had set up the composition notes as a credit upon the original notes,—and that the bank, by failing to reply, admitted the truth of that allegation, and allowed the credit to be taken accordingly, judgment being had for the residue. But the rule of the Ohio Code of Civil Procedure that the failure of the plaintiff to make denial by replying to new matter set up in the answer is a rule of pleading, which does not estop from setting up the truth in any other case not between the same parties. Collaterally, pleas are not to be regarded as admitting what they do not contest. Whart. Ev. § 1116a, and cases cited. There is no privity between the maker, indorser, and acceptor of a promissory note. Freem. Judgm. § 162, and cases cited. The judgment in the Brown county case, therefore, is not conclusive upon the bank in this case. It follows, upon all these considerations, that the plaintiff is entitled to judgment against the defendant for the amount due upon the original notes; and it is so ordered.