BOLAND *v.* AYCOCK *et al.*

No. 13418.  December 5, 1940.

*Dekle & Dekle* and *L. P. Strickland,* for plaintiff.

*C. E. Anderson* and *Oliver & Oliver,* for defendants.

Reid, Chief Justice.  This case arose on a caveat to the probate of a will, on the grounds of (1) mental incapacity, and (2) undue influence.  The verdict was in favor of the caveators.  The exception is to the overruling of demurrers to the caveat, and to the overruling of a motion for new trial.  The demurrers were directed to that part of the caveat which set up undue influence.  Taking up first the question of undue influence, we look to the Code, § 113-208 (which is merely a codification of a general legal proposition), declaring: "The very nature of a will requires that it should be freely and voluntarily executed; hence, anything which destroys this freedom of volition invalidates a will; such as fraudulent practices upon testator's fears, affections, or sympathies, duress or any undue influence, whereby the will of another is substituted for the wishes of the testator."  It is sometimes said that "undue influence" is a subtle something that defies definition; and in a sense this is true, but from our Code and precedents we can at least state some of the things which do not constitute undue influence.  The association of the phrase "undue influence" in the same context with the words, "fraudulent practices upon the testator's fears, affections, or sympathies, duress," shows that the influence spoken of, in order to be "undue," must be in the nature of fraud or duress.  Hence the recognized rule is that the "undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency." *Bohler* v. *Hicks,* 120 *Ga.* 800 (5) (48 S. E. 306) ; *Burroughs* v. *Reed,* 150 *Ga.* 724, 726 (105 S. E. 290).  Of course, if the persuasion or importunity consists of or is accompanied by fraud or mis-

representation of material facts, the case falls under the Code, § 113-209, which avoids a will so procured.

We recognize that what would not be such undue influence as to avoid a will in the case of a person of sound mind, good health, and intelligence may be such when exercised upon a person of failing mind, poor health, and other mental and bodily enfeeblements; but this is not so much because the things actually said or done would not constitute undue influence in the one case and would in the other, but because before acts of undue influence are sufficient to avoid a will it must appear that these acts were effective to the extent of making the testator execute a will contrary to his better judgment and desires. Therefore, since honest persuasion and argument, even to the extent of importunity, is not undue influence, it is not to be so considered in the case of a testator of enfeebled mind or body, any more than it would be if the testator were sound and well, provided of course the testator still has the mental capacity to make a will. To illustrate, an old man, who is childish and petulant, but not yet at that state of imbecility denounced in the Code, § 113-202, is about to make his will, and proposes to disinherit a son with whom he has become offended; it would not be undue influence for that son to apologize to his father, to beg him to forgive him, to importune him not to cut him off, even to shed tears and so affect his father's heart and mind as to make him repent and include the son in his will; and this is true even though one of the things influencing the father should be a desire to rid himself of his son's importunities. Nor would the case be different if it were the child's mother begging her husband not to cut off their son, even though one of the chief factors influencing the father to include the son in the will is to keep peace in the family or to retain the respect and affection of his wife. It is entirely proper that husbands and wives should consult each other and endeavor to meet each other's wishes in the making of their wills; and in the absence of fraud or duress, a wife's will is still her will, notwithstanding she comes to the state of mind where she decides to let him dictate its terms, provided of course she executes it as her will. In the case of an attack on a will for undue influence, as well as in the case of an attack for mental incapacity, it must appear that the alleged avoiding cause was operative and effective at the time of the execution of the will. While evidence of mental condition or acts

of undue influence at other times, not too remote, may be received to illustrate conditions existing at the time the will was executed, still after all the question is, was the testator in condition to make a will at the time he made it? *Brown* v. *Kendrick,* 163 *Ga.* 149 (135 S. E. 721) ; *Cook* v. *Washington,* 166 *Ga.* 329, 348 (143 S. E. 409). On the general subject of undue influence see *Walters* v. *Walters,* 151 *Ga.* 527 (107 S. E. 492) ; *Field* v. *Brantley,* 139 *Ga.* 437 (3) (77 S. E. 559) ; *Burroughs* v. *Reed,* 150 *Ga.* 724 (105 S. E. 290) ; *Ricketson* v. *Ricketson,* 151 *Ga.* 540 (107 S. E. 522). Though it is said in *Field* v. *Brantley,* supra, that "undue influence is the handmaiden of fraud, and good pleading requires an averment of the facts relied on to constitute it," still the distinction must be kept in mind between alleging the facts and alleging the evidence by which the facts are to be proved. *See Penniston* v. *Kerrigan,* 159 *Ga.* 345 (125 S. E. 795).

The substance of the allegation in the caveat to which the demurrer is directed is that "the undue influence and persuasion exerted over the testatrix by John E. Boland, her husband, and John Kenneth Boland, her stepson, consisted of importunities throughout the married life of the testatrix and John E. Boland, deceased, and representations by the said John E. Boland and Kenneth Boland that each of them was devoting his life to the interests of the testatrix and that they were entitled to have the testatrix leave all her property to them by will, to the exclusion of her blood relatives, as her blood relatives cared nothing for her and were not devoting themselves in any way to the furtherance of her health, happiness, and financial interests." It is not alleged that any of these representations were fraudulent or untrue. This is followed by the allegation that as a result of these importunities the testatrix was persuaded to destroy a will she had drawn in 1922, in which she made substantial gifts to her kin. As the caveat relates to a will executed in 1936, and not to the alleged destroyed will of 1922, these allegations are surplusage. It is then alleged that "through his constant importunities and persuasions as to what he (John E. Boland) and her stepson, John Kenneth Boland, were doing toward her health, happiness, and financial interests, and by said John E. Boland's resorting to tears and crying, tearful pleas, and the use of strong language to such a degree that the free play of testatrix's judgment, discretion, and wishes were over-

come, the will of said John E. Boland was substituted for that of the testatrix; that said testatrix, already of weak mind and feeble health, on account of such importunities, pleas, tears, threats and strong language, did not have the will or courage to resist, but yielded to them, *for the sake of peace and quiet and to escape the distress of mind and social discomfort caused by these constant importunities."* (Italics ours.) This is followed by allegations that in the years 1934 and 1935 (the will in question was executed in 1936), upon the solicitation of John E. Boland the testatrix had conferred with a lawyer in an effort to have a will drawn, but this lawyer was unable to obtain from her her testamentary wishes, on account of her ill health and mental condition; that at these times Mr. Boland used like importunities, tears, strong language, etc., to get her to make a will according to his wishes, with the result that she finally assented to having a will drawn, leaving substantial legacies to Mr. Boland and her stepson; that she did this to escape the distress of mind and social discomfort caused by these constant pleas and representations that Mr. Boland and her stepson were taking care of her and contributing their lives to her health and financial success; and that at the time of these pleas and representations Mr. Boland and her stepson were living on the property of testatrix and getting their income and support from her and the use of her property. This is followed by allegations that in the latter part of 1935 Mr. Boland again came to this same lawyer, who was then a judge of the superior court and a kinsman of the testatrix, to enlist his services in preparing a will for his wife, and the judge referred Mr. Boland and the testatrix to the court stenographer, who was also an attorney; that they went to this attorney, but the testatrix was not then mentally capable of making a will; being emotionally unstable, hysterical, and subject to spells of crying and laughter without cause; that at that time Mr. Boland gave directions as to how the will was to be made, and when the scrivener inquired of the testatrix as to her wishes, she would "cry and whimper and whimperingly say, 'Whatever he wants done about it put it in; he will tell you what he wants done;'" that the will this attorney prepared was not her will, "but was her will according to the wishes of John E. Boland;" that Mr. Boland was then resorting to pleas and importunities, and so harassed the testatrix in her mentally and physically diseased condition that she assented

to it to obtain peace and quiet and to escape the distress of mind and further social discomfort. It is further alleged that the will offered for probate was prepared by Judge L. P. Strickland, an attorney at law, from information given to him by Mr. Boland as to the terms and provisions of the will, and that in the preparation of it Judge Strickland did not see the testatrix or discuss the will with her or get her assent to it; that when this will was executed the testatrix was not of sound mind and disposing memory, but was moved thereto by the undue influence exerted over her by her husband, John E. Boland, and her stepson, John Kenneth Boland.

We think the judge erred in overruling the demurrer. In alleging what occurred as to the destroyed will of 1922, and the other wills prepared previously to the will offered for probate, the caveators were merely pleading evidence. The only issue on this subject permissible under the caveat was whether, *at the time the will offered for probate was executed,* the testatrix executed it under such influence as to prevent it from being her will *at that time,* within the rules we have herein stated. If properly linked up, the facts alleged in connection with these previous wills might have been given in evidence as tending to show the extent in time and quantity of the alleged undue influence, provided it was shown that it continued to the time the last will was executed. However, passing that point, and reducing all that is alleged down to its ultimate substance and effect, what the caveat really says is that by importunities accompanied by tears and representations the testatrix was induced to consent to the testamentary scheme proposed by her husband and stepson, to obtain quiet and peace of mind, and to avoid domestic or social discomfort. There is no allegation that the alleged representations were false, or that they were fraudulent, or that the testatrix was deceived or misled thereby, or that she did not know as well as they did whether or not these representations were true. We believe it has been demonstrated, by what has been said and the authorities cited, that the allegations of such persuasion and the obtaining of the testatrix's consent thereby is not the undue influence that the law contemplates. While the judgment overruling the demurrer to that part of the caveat setting up undue influence would have been rendered harmless had the judge at the trial eliminated that issue from the jury, he did not do so in this case, and the jury returned a general

verdict in favor of the caveators. Accordingly, for the error in overruling the demurrer the judgment must be reversed. The remaining headnotes will not be elaborated.

*Judgment reversed. All the Justices concur, except Atkinson, P. J., who dissents.*